UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ESAD BEKRIC, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16CV00200 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Esad Bekric, a person in federal custody. On November 21, 2013, Bekric was found guilty by a jury of the offense of possession with intent to distribute 50 kilograms or more of marijuana and, on February 10, 2014, this Court sentenced Bekric to the Bureau of Prisons for a term of 70 months, a sentence within the sentencing guideline range. The judgment was later amended to a sentence of 57 months. Bekric's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**I. Procedural History**

On March 21, 2013, Bekric was charged in a one-count indictment with Possession with Intent to Distribute Fifty Kilograms or More of Marijuana, in violation of 21 U.S.C. § 841(a)(1). District Court Docket, 1:13 CR 39 SNLJ, (DCD) 1. On September 12, 2013, the Government filed its Notice of Intent to Use Rule 404(b) evidence detailing Bekric's 2012 arrest during which he was driving a tractor trailer with 1,970 pounds of

marijuana concealed in the trailer. DCD 40. On October 1, 2013, Bekric filed a Motion in Limine to exclude this evidence. DCD 43. On October 4, 2013, the Government filed its response. DCD 44.

On October 22, 2013, at the pretrial conference, this Court denied the Motion in Limine, finding that there was sufficient proof to show that Bekric knowingly possessed the marijuana in Texas. DCD 47. This Court concluded that the incident in Texas was very similar to the charged incident in Missouri. TR., October 22, 2013 Pretrial Conference, p. 8.

Bekric's first trial ended in a mistrial on October 24, 2013 when the jury, upon being polled after returning a guilty verdict, was found not to be unanimous. DCD 52. On November 5, 2013, Bekric renewed his Motion in Limine to exclude the 2012 arrest. DCD 63. The Government again responded. DCD 64. On November 8, 2013, this Court denied the Motion in Limine for the same reasons stated at the pretrial hearing on October 22, 2013. DCD 67.

**II. Evidence Presented at Trial**

On November 20 and 21, 2013, Bekric was tried on the same indictment. The Government presented the testimony of Missouri State Highway Patrol (MSHP) Corporal Jeremy Shane Stewart, MSHP Trooper David Crank, DEA Special Agent Matthew Scheitlin, andUnited States Border Patrol Agent Jaime Olmos.

Corporal Stewart testified that on March 3, 2013, the criminal interdiction unit had established a ruse drug checkpoint at Exit 27 of northbound interstate highway I-55. Two large illuminated signs were placed before Exit 27. One sign cycled the messages "Drug

checkpoint" and "3/4 mile ahead." The second sign stated "K-9 in use ahead." TR., Vol. I, p. 28; Government Exh. 2A, 2B, 3. A police car with its lights on was positioned after the exit. TR., Vol. I, p. 32. Exit 27 has no services of any kind. TR., Vol. I, p. 28. The highway patrol troopers watched the exit ramp to determine if anyone committed a traffic violation when they exited to avoid the purported drug checkpoint. TR., Vol. I, p. 28.

On March 3, 2013, at approximately 7:55 p.m., Bekric left I-55 at Exit 27 driving a tractor-trailer. He failed to stop at the stop sign at the top of the exit and made a right turn. Bekric came to a stop in the middle of the road after his headlights passed over Corporal Stewart's patrol car which was parked on the road at the top of the ramp. TR., Vol. I, pp. 37-39. Corporal Stewart activated his emergency lights and completed a U-turn to pull next to Bekric's tractor trailer. TR., Vol. I, pp. 39-40. Corporal Stewart exited his patrol car and Bekric approached him stating that he had a problem with his "reefer," that is, the refrigerator unit that cools the trailer portion of the tractor trailer. TR., Vol. I, pp. 40-41.

Bekric was very nervous as he spoke to Corporal Stewart. His breathing was labored and he was jittery. TR., Vol. I, pp. 41-42. He told Corporal Stewart that he was coming from McAllen, Texas, an area which Corporal Stewart knew to be a source area for narcotics. Bekric told Corporal Stewart that the refrigeration unit was overheating. TR., Vol. I, p. 43. Corporal Stewart permitted Bekric to add what appeared to be water to the unit. TR., Vol. I, p. 44. Bekric told him that the temperature was supposed to be 45 degrees. TR., Vol. I, p. 44. Corporal Stewart observed that the unit showed that it was 45 degrees. Later, Corporal Stewart reviewed the bill of lading for the cargo of produce

3

which said it was to be kept at 45 degrees. The unit was making no noise that indicated that there was a problem. TR., Vol. I, p. 45. Bekric continued to appear nervous: hands shaking, breathing labored, voice cracking. TR., Vol. I, pp. 43, 46.

Bekric told Corporal Stewart that the truck tractor and the trailer belonged to him. He initially denied ever being in trouble but then admitted he had been arrested in Texas in 2012 for something found in his trailer. Bekric stated he did not know what was found in the trailer. TR., Vol. I, p. 47.

Corporal Stewart had called for assistance from Trooper David Crank, the canine officer. Trooper Crank deployed his drug detection canine Edy. Edy alerted to the trailer indicating that the odor of narcotics was present. Trooper Crank notified Corporal Stewart and told him there was a positive alert. TR., Vol. I, pp. 107-109. Corporal Stewart asked Bekric for his permission to search the trailer and its contents. Bekric agreed. TR., Vol. I, p. 48. Bekric provided the key to the padlock on the trailer. TR., Vol. I, p. 48. Later Bekric told Corporal Stewart that he was the only one who drove his tractor truck or used his trailer and that he was the only one with a key to the padlock. TR., Vol. I, pp. 61-62. Both the truck and the trailer were registered to Bekric. TR., Vol. I, p. 66.

Corporal Stewart opened the truck and observed a load of produce. Trooper Crank climbed over the load to the front portion of the trailer. A plywood or particle board wall that was held in place by a metal frame shielded the view of the white plastic molding that covered the refrigeration unit. TR., Vol. I, p. 55. After climbing over the load to the front of the trailer, Trooper Crank observed bundles of marijuana concealed behind the white plastic molding that was over the refrigeration unit. TR., Vol. I, pp. 110-111. He

saw that there were new screws and new screw holes on the panel which indicated that the shield had been removed repeatedly. TR., Vol. I, pp. 114-115.

Bekric was arrested at the scene and advised of his Miranda rights. TR., Vol. I, p. 49. He agreed to let Corporal Stewart examine his cellular telephone. Corporal Stewart observed two photos of the inside of a trailer with a false wall. Bekric told him these were photos from his arrest in Texas in 2012. The false wall was covered with either particle board or plywood. TR., Vol. I, pp. 62-64.

Corporal Stewart reviewed Bekric's trip logs and bill of lading. Bekric picked up three loads of produce in Texas on March 1, 2013. The loads were to be refrigerated and taken to Southern Illinois. However, the log book indicated that he sat in south Texas for twenty hours after picking up the three official loads before departing. TR., Vol. I, p. 92. In Missouri, when Corporal Stewart opened the back of the trailer to search, there was a seal on the back of the trailer. TR., Vol. I, p. 92. Bekric told Corporal Stewart that he had picked up the last load at Frontera. TR., Vol. I, p. 94. According to the produce companies, Frontera was the last place Bekric picked up a load of produce. TR., Vol. I, pp. 93, 99. However, Frontera did not place a seal on the truck. TR., Vol. I, p. 93; Defendant's Exh. K.

Bekric's cellular telephone records showed that he had a ten-minute phone call to "ES" as he exited the highway on March 3, 2013 at Exit 27. TR., Vol. I, p. 87. Bekric's contact list on his phone listed ES's work number in the McAllen/Edinburg, Texas area although his mobile and home phone numbers were different locations. TR., Vol. I, pp. 94-96.

After the tractor and trailer were driven by a Highway Patrol Sergeant to the Missouri Department of Transportation, the produce was unloaded and the particle board shielding the white plastic wall was removed. TR., Vol. I, p. 56. The troopers observed 43 numbered bundles of marijuana specifically packaged to fit into the different parts of the molding. TR., Vol. I, pp. 56-57, 116-117. The bundles were taken from the white plastic wall and transported to the Highway Patrol evidence room. TR., Vol. I, p. 58. They consisted of over 89 kilograms or approximately 198 pounds of marijuana. TR., Vol. I, p. 60; Government's Exh. 11. The value of this marijuana in Missouri was approximately $240,000. TR., Vol. I, p. 129.

After the marijuana was removed from the white plastic wall, the produce was loaded back into the trailer. The truck and trailer were taken to Satterfield Wrecker. The parties stipulated that the refrigerator unit was running when the truck was brought to Satterfield Wrecker. Government Exh. 14. The owner kept the unit running until the produce was picked up and placed in a replacement trailer. During the three days the unit was running on the lot, Ray Copeland, the owner of Satterfield Towing, checked the unit every couple of hours. The temperature never deviated from 45 degrees. Government Exh. 14.

On cross-examination, Corporal Stewart was asked by defense counsel if he and Trooper Templemire had discussed having Bekric make a controlled delivery of the truck to Southern Illinois. Corporal Stewart stated "I'm sure that he probably asked him about that, yes, sir." Corporal Stewart testified that he did not know what the result of the conversation was. DEA Special Agent Matthew Scheitlin was asked by defense counsel

on cross examination if, when Agent Scheitlin listened to Trooper Templemire's interview of Bekric, the Missouri Highway Patrol had proposed a controlled delivery with Bekric and Bekric agreed. TR., Vol. I, pp. 136-137. The Government objected and the this Court sustained the objection to hearsay evidence. TR., Vol. I, p. 137. Defense counsel made an offer of proof that Bekric had agreed to make a controlled delivery. Counsel stated that he offered Bekric's statement to Trooper Templemire, as heard on a recorded interview by Agent Scheitlin, for "their state of mind" and "not offered for the truth." TR., Vol. I, pp. 138-140.

The Government objected that the defense was offering the hearsay statements for the truth "which is that Bekric agreed to make a controlled delivery." Defense counsel stated, "It's offered to show that they didn't follow the investigative technique that he himself endorsed of a controlled delivery when they had the opportunity to do so." This Court denied the offer of proof. TR., Vol. I, pp. 139-141.

U.S. Border Patrol Agent Jaime Olmos testified concerning a stop involving Bekric in 2012 at the Border Patrol checkpoint located twenty-nine miles north of Laredo, Texas on Interstate Highway I-35. Agent Olmos is a canine officer whose dog Flor was trained to alert to narcotics and concealed humans. TR., Vol. I, p. 143. Agent Olmos testified that all vehicles must stop at the checkpoint. TR., Vol. I, p. 145.

On February 3, 2012, at approximately 10:45 p.m., Agent Olmos was working Inspection about forty yards before the vehicles got to the primary toll booth checkpoint. TR., Vol. I, p. 147. A tractor trailer drove by and Flor alerted to the vehicle by raising her head, sniffing the air, and pulling Agent Olmos along after the trailer. TR., Vol. I, p. 148.

7

As the trailer stopped at the primary checkpoint, Flor went to the trailer and alerted at the front portion to the odor of narcotics or concealed humans. Agent Olmos notified the primary agent to send the truck to secondary inspection. TR., Vol. I, p. 149. Bekric was driving the truck and was the sole occupant. TR., Vol. I, p. 150. At the secondary inspection site, Bekric left the truck and was fifteen or twenty yards away while Flor was taken to the truck and again alerted on the front portion of the trailer. TR., Vol. I, pp. 150-151. The Border Patrol then used a large X-ray machine that provided them with an image of the inside of the trailer. The agents observed bundles stacked all the way to the ceiling at the front of the trailer—unlike the rest of the load in the trailer. TR., Vol. I, pp. 152-153. After banging on the trailer wall, they found a false wall with a trap door at the front of the trailer that contained 85 bundles of marijuana weighing 1,970 pounds. TR., Vol. I, p. 154. Two boards were placed over the front of the false wall and the trap door so that they were concealed. TR., Vol. I, pp. 157-158. Based on the tight packaging, it appeared the bundles were packaged in Laredo, as opposed to in Mexico. TR., Vol. I, p. 159. Bekric was arrested when the marijuana was found. TR., Vol. I, p. 165. Following the testimony regarding this incident, this Court read the jury the Rule 404(b) limiting instruction. TR., Vol. I, pp. 167-168.

  Bekric testified that he grew up in Germany and Bosnia and came to the United States in 1996. TR., Vol. II, pp. 183, 185. He was a self-employed owner/operator of his tractor trailer. TR., Vol. II, p. 188. Bekric testified that he had problems with the refrigeration unit on his trailer starting in May 2012. TR., Vol. II, p. 191. Bekric stated that the most recent repairs to his refrigeration unit were made on February 28, 2013.

8

TR., Vol. II, p. 204. On cross examination, Bekric admitted that the February 18, 2013 repairs had nothing to do with the refrigeration unit. The receipts from February 20 and February 21, 2013 were for the purchase of anti-freeze and windshield wiper fluid. Bekric had no receipts for any work supposedly done on his refrigeration unit on February 28, 2013. TR., Vol. II, pp. 233-236. He testified that he did not watch anyone load his truck on March 1, 2013. TR., Vol. II, p. 208. He testified that when he was arrested in Missouri he told Trooper Templemire that he would deliver the marijuana wherever they wanted. TR., Vol. II, p. 223.

Bekric testified that he picked up the 2012 load in Laredo, Texas. TR., Vol. II, p. 213. On direct examination, he testified that he noticed that it was overweight and called the broker and they fixed it. Bekric then drove to the federal checkpoint and was stopped and arrested. TR., Vol. II, p. 214. On cross examination, he stated that he told Missouri Highway Patrol Trooper Templemire that, in 2012, when his truck was overweight, he called the broker and they examined the trailer and found nothing suspicious. TR., Vol. II, pp. 244-245. Bekric said he told Trooper Templemire that he then called the county sheriff who came out to his tractor trailer with a dog. TR., Vol. II, p. 251. According to Bekric, the sheriff's department called the Border Patrol. TR., Vol. II, p. 251. He told Trooper Templemire that he was escorted to the border checkpoint by the Border Patrol. TR., Vol. II, p. 247. Bekric told Trooper Templemire that it took eight hours for the Border Patrol to find the false wall. TR., Vol. II, p. 247. This testimony was inconsistent with his testimony on direct examination as well as with Agent Olmos' testimony. TR., Vol. II, p. 252.

9

Bekric testified that he saw Agent Olmos' dog alert to his truck at the 2012 stop. TR., Vol. II, p. 239. He said another agent told him 2,000 pounds of marijuana was found in the truck. Bekric admitted that he told Corporal Stewart at the 2013 arrest that he did not know what was found in the truck at the 2012 stop. TR., Vol. II, pp. 240-241.

Bekric admitted telling Corporal Stewart that he had the only key to the padlock on the trailer at the 2013 stop in Missouri, but he denied it was his lock. TR., Vol. II, p. 253. He denied observing the two large highway signs that stated that a drug checkpoint was ¾ mile ahead and that a canine was in use before he left the highway at Exit 27. TR., Vol. II, p. 254. Bekric testified that there were three signs: the first sign was under the bridge after Exit 27, the second sign was after the bridge, and the third sign was between Exit 27 and 28. TR., Vol. II, pp. 261-262. He said that he saw the signs after he was arrested. TR, Vol. II, p. 259. Bekric admitted telling Trooper Templemire that his last pick-up was at Frontera, but testified that was incorrect. TR., Vol. II, p. 278. He stated that he kept the produce in the trailer with the refrigeration unit running while he was idle for twenty hours in McAllen, Texas. He stated it was "very hot temperature" in Texas. TR., Vol. II, pp. 278-279.

On November 20, 2013, the jury found Bekric guilty. On February 10, 2014, this Court imposed a sentence of seventy months imprisonment and three years of supervised release.

Bekric filed a timely Notice of Appeal on February 18, 2014. On appeal he claimed that the District Court erred by 1) admitting evidence of the 2012 Texas stop pursuant to Rule 404(b); and 2) excluding testimony by Agent Scheitlin regarding

hearsay statements of Trooper Templemire and Bekric concerning Beckric's willingness to make a controlled delivery of the marijuana. His appeal was denied and the judgment was affirmed on May 11, 2015. *United States v. Bekric*, 785 F.3d 1244 (8th Cir. 2015). On July 25, 2016, Bekric filed his timely Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence, based on ineffectiveness of counsel. On July 26, 2016, this Court ordered the Government to respond by September 9, 2016.

**IV. Legal Standard**

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice. First, petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id*. The Eighth Circuit Court of Appeals reiterated that "our scrutiny of counsel's performance must be 'highly deferential.'" *Hamberg v. United States*, 675 F.3d 1170, 1172 (8th Cir. 2012) [citations omitted].

Second, petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. at 687. This requires a petitioner to

11

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The court need not address both components—performance and prejudice--if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

To succeed on a claim pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), petitioner must show "(1) the prosecution suppressed evidence, (2) the evidence was favorable to him, and (3) the evidence was material to either his guilt or punishment." *Mandacina v. United States*, 328 F.3d 995, 1001 (8th Cir. 2003), quoting *United States v. Carman*, 314 F.3d 321, 323-24 (8th Cir. 2002). "To establish materiality in the context of *Brady*, 'the accused must show there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different.'" *Mandacina*, 328 F.3d at 1001, *citing Drew v. United States*, 46 F.3d 823, 828 (8th Cir. 1995). "A 'reasonable probability' is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding." *Id*.

"We have made clear that 'mere speculation that materials may contain exculpatory evidence is not…sufficient to sustain a *Brady* claim.'" *United States v. Wadlington*, 233 F.3d 1067, 1076-7 (8th Cir. 2000), quoting *United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997). "There are a number of limitations to *Brady*, including the principle that information available from other sources or evidence already possessed by a defendant is not covered by the rule." *United States v. Jones*, 160 F.3d

473, 479 (8th Cir. 1998). Bekric's claim shall be denied.

"A Section 2255 motion 'can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)), *cert. denied*, 540 U.S. 1199 (2004).

### IV. Analysis of Claims

#### A. First Claim

Bekric's first claim is "whether the defense counsel's failure to properly argue the innocence of the petitioner, when the Government hide exculpatory material prior during and after trial." Bekric provides absolutely no specificity for this claim; there is no citation to any portion of the trial or evidence purportedly withheld. His memorandum on this claim consists of inapposite generalizations ranging from a standard discussion of *Brady* caselaw to "selecting a jury." He has wholly failed to show: (1) the prosecution suppressed evidence, (2) the evidence was favorable to him, and (3) the evidence was material to either his guilt or punishment. He has also failed to show in what manner his attorney failed to argue his innocence at trial. His claim is denied.

#### B. Second Claim

Bekric's second claim is "whether the defense counsel failure in argue that hiding exculpatory material and to lie under false statement by the U.S. Assistant Attorney and the agents of the Government constituted misconduct by the Government." In his

memorandum, the first subpart of the claim states: "Counsel failed in present evidence in my case he and the government hid necessary evidence to prove my innocence, counsel never argue about the importance of the necessary proffs at trial as a DNA test and fingerprints, also never was presented as evidence the record of the audio when I stay from 7:30 pm, to 03:00 am under custody of the state trooper, in order to demonstrate that the Miranda's rights were violated."

Bekric's claim concerning lack of argument on DNA and fingerprints is contradicted by the record. In closing argument, his attorney stated: "Neither in Texas nor in Missouri were there fingerprints or DNA associated with Mr. Bekric on the marijuana packaging or the marijuana or even on the unusual condition of the truck in Texas with this false wall or this plastic covering that had been taken off and put back on with shiny screws." TR., Volume II, p. 319. Bekric's claim that his attorney never attempted to show that his *Miranda* rights were violated is also contradicted by the record. A hearing on Bekric's motions to suppress statements and evidence was held on May 3, 2013. Testimony was taken from Trooper Templemire and he was vigorously cross-examined by Bekric's counsel as to the circumstances of Bekric's statement. Motion to Suppress Hearing, May 3, 2013, pp. 86-100.

Bekric's second subpart of his second claim is "Also he never objected when the Court allowing hearsay testimony by Special Agent Scheitlin to what evidence was said to trooper Templemire who was not present at court with no notes, only recalling hearsay statements." Bekric's claim on appeal was that the hearsay evidence should have been admitted and that this Court erred in sustaining the Government's objection to the

hearsay statements between Trooper Templemire and Bekric. Bekric's counsel attempted to elicit hearsay evidence that Bekric had agreed to perform a controlled delivery of the marijuana in the truck but that the Highway Patrol had declined. TR., Volume I, pp. 136-137. The Court of Appeals affirmed the this Court's exclusion of the hearsay evidence. Bekric, 785 F.3d at 1247-1248.

Thus, this Court never permitted hearsay evidence from Agent Scheitlin to be admitted into evidence. Bekric's claim that defense counsel was ineffective for failing to prevent the hearsay statements from being admitted is contradicted by the record: the hearsay evidence was excluded after the Government objected. TR., Vol. I, p. 137. In addition, as noted by the Court of Appeals, Bekric himself testified as to the contents of the same out-of-court conversation. Bekric, 785 F.3d at 1248. TR., Vol. II, p. 223.

Bekric's third subpart of his second claim is "Never was presented text messages, or any cell phone call, or computer messages, or money transfers in my case, only this supposily 10 minutes call to ES." Using phone records, Bekric's attorney established that Bekric had made a ten minute cell phone call during the time Bekric was exiting the highway—which supported Bekric's statement that he had called someone about fixing the problems with the refrigeration unit on the truck. TR., Vol. I, p. 87. Bekric has not established that any further relevant evidence existed. Moreover, he cannot show prejudice: that such evidence would have been exculpatory and would have changed the outcome of the trial.

### C. Third Claim

Bekric's third claim is "whether the defense counsel failure in argue that the

Government presented false evidence during the trial, when presented the photo of a trailer wich is not of the petitioner." In support of this allegation, Bekric's memorandum states that "The petitioner contends that he has suffered a Due Process Right violation, where federal agents and state officers have manufactured the crime of a drug rip-off, and there existed no true and real drugs, and in doing so, targered poor blacks and latinos, and foreign people." This claim is nonsensical. Bekric was stopped driving his truck and trailer. His trailer was found to contain approximately 198 pounds of marijuana. TR., Vol I, pp. 37-40, 60. He told the trooper that the truck and trailer belonged to him. TR., Vol. I, p. 47. Bekric identified a photo of the trailer at trial. TR., Vol II, p. 243. His claim is contradicted by the record.

### D. Fourth Claim

Bekric's fourth claim is "whether the defense counsel's failure in argue that the Eastern District of Missouri did not has jurisdiction to admite evidence of a prior act of the State of Texas that was dismissed for insufficient evidence." Defense counsel twice attempted to exclude evidence of the Texas arrest through a motion in limine. DCD, 43, 63. His motion was denied. DCD 47, 67. This Court's admission of the evidence was affirmed on appeal. *Bekric*, 785 F.3d at 1246-1247. Bekric cannot show that his counsel was deficient simply because he did not prevail in his arguments for exclusion.

### CONCLUSION

As fully delineated above, because Bekric's claims are refuted by the record, they are denied without a hearing.

16

For the foregoing reasons, this Court denies all of the claims contained in Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Bekric's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Bekric has not made a substantial showing of the denial of a federal constitutional right.

Dated this 9th day of February, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE